IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER M. MEEHAN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-21-1191-AMG |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Christopher M. Meehan ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 11, 12), and the parties have fully briefed the issues. (Docs. 17, 19, 20).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 15, 16). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.      **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.    Procedural History**

Plaintiff filed an application for DIB on January 21, 2019, and an application for SSI on January 14, 2019, alleging a disability onset date of May 15, 2012. (AR, at 53, 54, 69, 70, 229). The SSA denied the applications initially and on reconsideration. (*Id*. at 87-93, 94-96, 99-103). Then an administrative hearing was held on November 13, 2020. (*Id*. at 28-50). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 15-23). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final

decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.   The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2012, the alleged onset date.  (AR, at 18).  At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, COPD, obesity, and hypertension.  (*Id.*)  At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments.  (*Id.*)  The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,] lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, except occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; must avoid exposure to poorly ventilated areas and exposure to pulmonary irritants, such as fumes, odors, dusts, and gases.

(*Id.* at 20).  Then, at Step Four, the ALJ concluded that Plaintiff was able to perform his past relevant work as a business representative, labor union.  (*Id.* at 22-23).  Thus, the ALJ found that Claimant had not been under a disability since May 15, 2012.  (*Id.* at 23).

## IV.   Claims Presented for Judicial Review

Plaintiff makes three claims, all related to the ALJ's formulation of the RFC.  (Doc. 17, at 7-15).  Specifically, he contends the ALJ: (1) should have ordered a consultative examination; (2) "crafted an RFC out of whole cloth;" and (3) did not properly analyze Plaintiff's subjective complaints.  (*Id.*)  In response, the Commissioner contends the record was sufficiently developed without ordering a consultative examination, the ALJ properly

analyzed Plaintiff's symptoms, and the ALJ evaluated the whole record and assessed the RFC based on evidence before him. (Doc. 19, at 6-14). The Court finds Plaintiff's contentions of error are without merit.

## V.     The ALJ Did Not Err in Formulating the RFC.

### A.     The ALJ's RFC Determination

The ALJ discussed various pieces of evidence in support of his RFC determination. (AR, at 20-22). The ALJ considered Plaintiff's hearing testimony regarding his alleged symptoms and limitations. (*Id.* at 20). The ALJ also summarized the medical record, including Plaintiff's complaints to his medical providers, examination notes, and findings from a CT scan of Plaintiff's spine. (*Id.* at 21). The ALJ also addressed the opinions of the state agency doctors, who noted Plaintiff did not return forms and concluded they had insufficient evidence to evaluate Plaintiff's disability. (*Id.* at 58-59, 65-66, 75-76, 82-83). The ALJ found these opinions not persuasive because the available evidence "support[ed] a determination that [Plaintiff] has impairments that result in limitations in his ability to perform basic work activities." (*Id.* at 21-22). In evaluating Plaintiff's symptoms, the ALJ found that Plaintiff's "treatment was routine in nature with significant gaps," he "was not treated for any significant symptoms," and "his hypertension and COPD were controlled with medications." (*Id.* at 22).

The ALJ concluded:

> [Plaintiff's] degenerative disc disease . . . with chronic pain and swelling in the lower ankle supports limiting [Plaintiff] to a light level of exertion, but no further exertional limitations are warranted, as [Plaintiff] had no motor or neurological deficits. In consideration of [Plaintiff's] complaints of pain and subjective weakness, the undersigned limited [Plaintiff] to occasional

>climbing of ramps and stairs, but never climbing ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl.  In regards to [Plaintiff's] COPD/Emphysema, the undersigned indicated that [Plaintiff] must avoid exposure to poorly ventilated areas, and exposure to pulmonary irritants, such as fumes, odors, dusts, and gases.

(*Id.*)

## B. The ALJ Did Not Err by Not Ordering a Consultative Examination.

Plaintiff contends the ALJ failed to properly develop the record and should have ordered a consultative examination. (Doc. 17, at 10-12).  He asserts the ALJ should have ordered the consultative examination because Plaintiff requested one and the state agency doctors found there was insufficient evidence to evaluate the claim. (*Id.*)  The Court finds the ALJ did not err by electing not to order a consultative examination.

"[A]dministrative disability hearings are nonadversarial . . . and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall*, 561 F.3d at 1062 (internal quotation marks omitted).  "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts."  *Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993) (internal quotation marks omitted).

An ALJ "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).  Relevant to Plaintiff's argument, an ALJ "may purchase a consultative examination . . . when the evidence as a whole is insufficient to support a determination or decision on [a claimant's] claim."  20 C.F.R. §§ 404.1519a(b); 416.919a(b).  "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's

counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins*, 113 F.3d at 1167. "Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* "But there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)).

Plaintiff's non-attorney representative, Andrew S. Youngman submitted a Representative Brief for the ALJ's consideration. (AR, at 85, 265). Citing evidence, Mr. Youngman argued that Plaintiff's "conditions would significantly affect his ability to sit, stand, walk, lift, and carry due to his physical conditions" and that Plaintiff "would be unable to perform any work in his physical conditions." (*Id.* at 265). In other words, Mr. Youngman asserted that the record contained sufficient evidence for the ALJ to find disability. Mr. Youngman argued in the alternative that if the ALJ was "unable to issue a favorable decision based on the lack of records, [Plaintiff] would request that [he] be scheduled for a Consultative Examination" because Plaintiff lacked insurance and was "unable to treat regularly." (*Id.*)

An attorney represented Plaintiff at the hearing. (*Id.* at 28, 150). During a discussion about the possibility of outstanding medical records, the following exchange occurred between the ALJ and the attorney:

> ALJ: I did see in the brief where there was a request for a consultative exam if we didn't have, you know, other records. And as you are probably well aware, we are not getting consultative exams right now with the covid 19.

8

> REP: Right.
>
> ALJ: They haven't started those again yet. I don't want to delay [Plaintiff's] request –
>
> REP: So, what records do you want us to try to get that you don't have?

(*Id.* at 45).

Mr. Youngman's written request identified a potential issue for development – the ALJ may not find enough evidence in the record to make a finding of disability because Plaintiff did not "treat regularly" due to a lack of insurance. (*Id.* at 265). But the request only sought a consultative examination *if* the ALJ was "unable to issue a favorable decision based on the lack of records." (*Id.*) The ALJ's decision of nondisability was not based on the lack of records. Instead, the ALJ reviewed the record and found sufficient evidence to determine severe impairments, formulate the RFC, and find Plaintiff was not disabled based on his ability to perform past relevant work. (*Id.* at 20-23). Thus, the ALJ did not err by not implementing Mr. Youngman's request.

Plaintiff argues "[t]he ALJ acknowledged that, but for the intervening pandemic, a consultative examination was appropriate." (Doc. 17, at 11). The Court does not agree with Plaintiff's interpretation of the hearing transcript. The ALJ noted consultative examinations were unavailable due to the pandemic, but he did not state that a consultative examination would have otherwise been necessary. (AR, at 45). And notably, Plaintiff's attorney did not object or otherwise re-urge the request for a consultative examination. Thus, the Court finds the ALJ did not err by exercising his "broad latitude" in electing not to order a consultative examination. *Hawkins*, 113 F.3d at 1166.

### C. The ALJ Properly Considered the Medical Record in His Formulation of the RFC.

Plaintiff contends the ALJ "crafted an RFC out of whole cloth." (Doc. 17, at 8). Plaintiff notes the ALJ rejected the only opinions in the record regarding his physical RFC. (*Id.* at 8-9). Then, he asserts the ALJ improperly "substituted his own opinion for that of a qualified medical expert" and that the ALJ was "not qualified to translate" findings from the medical record "into functional limitations." (*Id.* at 9-10). Thus, he concludes the RFC was not supported by substantial evidence. The Court finds this argument is without merit.

Plaintiff first argues that RFC is not supported by substantial evidence because he found that the state agency physicians' opinions were not persuasive and formulated an RFC based on his own interpretation of the medical evidence. (*Id.* at 8-9). The Tenth Circuit rejected a claimant's argument that "components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion," holding that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Berumen v. Colvin*, 640 F. App'x 763, 765 (10th Cir. 2016) (rejecting the claimant's argument that "an ALJ may not make an RFC finding that differs from a physician's opinion unless the ALJ relies on a conflicting medical opinion"); *Samantha W. v. Kijakazi*, 2022 WL 716149, at *4 (D. Utah Mar. 10, 2022) ("[T]he absence of medical opinion evidence supporting some aspects of the RFC does not mean the ALJ "'crafted the RFC out of whole cloth.'").

10

In a similar vein, Plaintiff contends the ALJ was "not qualified to translate" the radiological evidence, laboratory evidence, and physical findings "into functional limitations." (Doc. 17, at 10). But "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). In support of his argument, Plaintiff cites *Hamlin v. Barnhart*, in which the Tenth Circuit held that "an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." 365 F.3d 1208, 1221 (10th Cir. 2004). But that is not what Plaintiff alleges – he does not, for example, assert the ALJ second-guessed a doctor's medical finding. Instead, he simply argues the ALJ was not permitted to interpret the medical evidence and formulate the RFC. But "although an ALJ cannot make his/her own medical diagnoses from raw medical data in the record, an ALJ must be able to look at the interpretations of a plaintiff's raw medical data and determine limitations for a Plaintiff's RFC even if no medical professional offered any opinion as to what those RFC limitations should be." *Anthony G. v. Kijakazi*, 2022 WL 10052652, at *3 (D. Utah Oct. 17, 2022). Here, the ALJ did not make any medical diagnoses; rather, the diagnoses contained in the record supported the ALJ's finding severe impairments of degenerative disc disease, COPD, hypertension, and obesity. (AR, at 55, 289, 305-09, 317-18). The ALJ then appropriately carried out his charge of determining the RFC.[3]

---

[3] In this argument, Plaintiff cites portions of the medical record without any accompanying explanation. (Doc. 17, at 9-10). In his reply brief, Plaintiff argues that "despite the rather remarkable objective evidence in the record, the ALJ crafted an RFC out of whole cloth, citing to nothing that could be said to support his RFC determination." (Doc. 20, at 2). But this effectively is a request to reweigh the evidence, which the Court cannot do. *See Vigil*, 805 F.3d at 1201.

### D. The ALJ Did Not Err In His Consideration Of Plaintiff's Subjective Complaints.

Plaintiff argues the ALJ erred in the consideration of his alleged symptoms. When evaluating a claimant's subjective symptoms, an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *See* Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See id.* at *7. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190. Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing

court's] guide." *Id*. Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

At the hearing, Plaintiff testified he has pain in his lower back and legs, has fatigue to the point of "hav[ing] to take a break" and becoming bedridden, is "unable to stand for a long time," and can do household chores with periods of rest. (AR, at 38-39). The ALJ summarized Plaintiff's testimony in the decision by noting Plaintiff's report of "pain in his low back, hands and feet, which prevented him from working." (*Id.* at 20). After considering the evidence, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the evidence of record." (*Id.*)

To support his finding, the ALJ reviewed Plaintiff's medical record. He addressed Plaintiff's complaints to his doctors of back pain, examination findings (both normal and abnormal), CT scan findings, and records indicating Plaintiff's hypertension and COPD appeared managed or controlled. (*Id.* at 21). Portions of the summary reflect Plaintiff reported pain in his back and had a positive right leg raise, but also had no weakness in his legs, normal and painless range of motion in his back, normal gait, and a grossly normal musculoskeletal system. (*Id.*) The ALJ concluded:

> [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although [Plaintiff] has received some treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. [Plaintiff] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [Plaintiff's] favor, but the medical records reveal that the medications have been relatively effective in controlling [Plaintiff's] symptoms.

13

(*Id.* at 22).

Plaintiff contends the ALJ's analysis was boilerplate and that the ALJ's "discussion of the evidence is contained upon one page of the decision, and does not discuss any of Plaintiff's allegations in connection with the evidence, or discuss how the evidence apparently contradicts those allegations." (Doc. 17, at 12-13). The Court disagrees. After finding the Plaintiff's alleged symptoms were inconsistent with the evidence of record, the ALJ summarized the medical evidence.[4] (AR, at 21-22). By discussing Plaintiff's reports of pain and other symptoms to his medical providers, the effectiveness of his medications, and the type of treatment he received for his conditions, the ALJ considered appropriate factors. *See* SSR 16-3p, 2017 WL 5180304, at *7-8. Further, Plaintiff's contention that the ALJ did not discuss Plaintiff's symptoms in connection with the evidence or how the evidence contradicts Plaintiff's allegations is without merit. The ALJ neatly explained in his conclusion why the record did not support Plaintiff's allegations of disabling symptoms and addressed the specific facts he considered in coming to such conclusion. (AR, at 22). The Court finds the ALJ's symptom analysis was specific to Plaintiff and adequate, not boilerplate as Plaintiff contends.

Plaintiff also argues the ALJ improperly relied on Plaintiff's routine and conservative treatment because such treatment was "a direct consequence of his financial

---

[4] Plaintiff does not identify any shortcomings in the summary of the medical record other than its length. While the ALJ's summary of the medical evidence was only one page, there were relatively few records to address. Further, Plaintiff cites no authority suggesting a minimum number of pages must be dedicated to summarizing the medical record, and the Court is not aware of any.

14

situation" and the ALJ should have considered that as a reason why he did not obtain more treatment. (Doc. 17, at 13). An ALJ "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record" if "the frequency or extent of the treatment sought . . . is not comparable with the degree of the individual's subjective complaints. SSR 16-3p, 2017 WL 5180304, at *9. But, an ALJ should not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* One such reason is that "an individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *10.

In support of his argument, Plaintiff directs the Court to the ALJ's statement that his "'treatment has been essentially routine and/or conservative in nature.'" (Doc. 17, at 13) (quoting AR, at 22). But Plaintiff did not assert that more aggressive treatment was recommended and he did not seek it due to his lack of health insurance. Instead, Plaintiff testified generally that he does not have insurance and that it was difficult to go to the free clinic because he needed to secure a ride to get there. (AR, at 37-38). Under these circumstances, the ALJ was not required to inquire further. *See Tennie L.S. v. Kajakazi*, 2022 WL 741062, at *5 (N.D. Okla. Mar. 11, 2022) (finding an ALJ was not required to inquire about a claimant's failure to seek care due to an inability to pay where the ALJ found that "claimant's treatment . . . is not indicative of someone with her alleged level of pain and limitation from impairment").

The ALJ also noted Plaintiff's treatment had "significant gaps." (AR, at 22). To the extent that the evidence of Plaintiff's lack of insurance and difficulty traveling to appointments at a free clinic may be a valid reason for the significant gaps, the ALJ's failure to discuss the issue in the decision is not reversible error. This is because the ALJ provided other valid reasons for discounting Plaintiff's alleged symptoms. *See Garcia v. Comm'r,* SSA**,** 817 F. App'x 640, 647-48 (10th Cir. 2020) (rejecting the claimant's argument that "the ALJ failed to inquire about possible reasons for . . . minimal treatment, such as the possibility that he lacked the financial means to seek treatment" in part because "the absence of records was not the only basis for the ALJ's skepticism about [the claimant's] symptoms"); *Scott v. Berryhill*, 695 F. App'x 399, 406 (10th Cir. 2017) (relying on the ALJ's other findings – which the plaintiff did not challenge – to hold "the ALJ's credibility assessment, while perhaps not perfect, is supported by substantial evidence"); *Cook v. Berryhill*, CIV-18-711-HE, 2019 WL 1783080, at *3 (W.D. Okla. Apr. 8, 2019) ("[E]ven if the Court agreed with Plaintiff that the ALJ improperly relied on her daily activities when assessing her allegations, any error would be harmless considering the other substantial evidence supporting the ALJ's assessment."), *adopted*, 2019 WL 1781423 (W.D. Okla. Apr. 23, 2019). Therefore, the Court finds the ALJ's assessment of Plaintiff's subjective complaints was supported by substantial evidence.

## VI.     Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner.

**SO ORDERED** this 22nd day of February, 2023.

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE